

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00173-CV

———————————————————

IN RE: THE COMMITMENT OF WILLIE DWAYNE COLES

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. D371-S-14292-19

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. BACKGROUND

The State filed a petition to civilly commit Willie Dwayne Coles as a sexually violent predator (SVP). The State alleged that Coles had been convicted of two sexually violent offenses: sexual assault of a child and indecency with a child by contact. According to the State, Coles committed the first offense in 1994 and the second in 2014.

Two witnesses testified at the jury trial: the State's expert, Dr. Darrel Turner and Coles. Turner opined that Coles suffers from a behavioral abnormality that causes him to be an SVP. Turner based his opinion on Coles's risk factors for reoffending, his criminal history, his interview of Coles, and the two psychological tests that he administered to Coles. Coles testified that he had never sexually assaulted any children and that he is not an SVP.

The jury found beyond a reasonable doubt that Coles is an SVP. The trial court then ordered Coles committed until he is no longer likely to engage in predatory acts. This appeal followed.

## II. THE LAW ON CIVIL COMMITMENT

At a trial on a State's petition seeking civil commitment, "[t]he judge or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a).

A person is a sexually violent predator if that person "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a)(1), (2). "[B]ehavioral abnormality" has a statutory definition: "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

## III.  THE RECORD BEFORE US

### A.  DR. TURNER'S TESTIMONY

The State retained Dr. Darrel Turner to evaluate Coles and opine whether he has a behavioral abnormality as defined by the Texas Health and Safety Code. At trial, Dr. Turner described his qualifications to handle civil-commitment cases, including his educational background, his professional licenses, and his specialized training in forensic psychology. Dr. Turner has been performing civil-commitment evaluations since 2013. Dr. Turner explained that many different agencies have retained him to conduct civil-commitment evaluations over the years, including the State Counsel for Offenders and the Special Prosecution Unit, as well as numerous defense attorneys.

Additionally, Dr. Turner stated that he has conducted research and written articles about sex offenders and recidivism. Dr. Turner also testified that he has experience treating sex offenders.

3

According to Dr. Turner, there is no test in and of itself that can determine whether a person suffers from a behavioral abnormality. Accordingly, when Dr. Turner conducts civil-commitment evaluations, he reviews an individual's pertinent records, conducts an interview with the individual, and relies on testing instruments to indicate whether a person will reoffend. Dr. Turner testified that the methodology he uses is in accordance with his training as a forensic psychologist and with the accepted standards in the field of forensic psychology. Dr. Turner explained that a forensic psychologist's job is to offer an opinion on a mental-health matter that has legal ramifications. Dr. Turner also pointed out that this methodology is the same methodology used by other experts who perform behavioral-abnormality evaluations.

As it relates to his evaluation of Coles, Dr. Turner reviewed Coles's pertinent records, including his jail and prison records, his prior psychological evaluations, records related to his prior sexual and nonsexual offenses, and his deposition. Dr. Turner also conducted a face-to-face interview with Coles and administered two psychological tests that are helpful in determining whether a person suffers from a behavioral abnormality.

## 1. Risk Factors of Reoffending

Dr. Turner testified that three risk factors best predict an individual's likelihood of reoffending. The first is a person's history of sexual deviancy—in this case, Coles's history of engaging in sexual acts with children. Dr. Turner explained that sexual deviance is a chronic condition and that Coles's attraction to children in 1994 and

4

2013 demonstrates that he suffers from this chronic condition. Dr. Turner believes that Coles is sexually attracted to children today.

A second risk factor according to Dr. Turner, is a person's history of antisocial behavior—here, Coles's history of committing acts in violation of the law and his refusal to take responsibility for his actions. Dr. Turner pointed out that not only does Coles sexually offend against children, but he also accuses his young victims of lying about the incidents. Dr. Turner testified that like sexual deviance, an antisocial personality is a chronic condition.

The third risk factor is "persisting after punishment," meaning that a sex offender persists in offending even after he has been punished for his initial documented sex offense. Dr. Turner testified that "history tends to repeat itself, and past behavior is very often a good predictor of future behavior." Specifically as to Coles, Dr. Turner stated:

> We're here to determine whether or not he's likely to commit more sex offenses after he gets out. He's already shown that that's something that he has done.
>
> He committed a sex offense, he went to prison, he got out, he failed to register properly multiple times, he went back to prison. And during that second period, to my knowledge, no disciplinary infractions, just like this time. Yet when he got out, he committed another sex offense at the age of 58.

### 2. History of Sexual Offenses

During his testimony, Dr. Turner described Coles's convictions for sexually violent offenses. Coles was convicted of sexual assault of a child in 1994. At that

5

time, Coles was in his late thirties and the victim, his niece, was fourteen years old. One evening when his niece and three other children spent the night at his house, Coles woke his niece, exposed himself to her, and asked her to handle his penis. Coles then digitally penetrated her vagina and forced his penis into her vagina. Coles had digitally penetrated her vagina the day before when the two were riding in Coles's car. Coles pled guilty to the charge of sexual assault, and the trial court sentenced him to ten years in prison.

Coles told Dr. Turner that he did not sexually assault his niece. Coles stated that his niece had made up the story to get even with him for telling her grandmother that she was someplace that "she wasn't supposed to be." Coles referred to his niece as promiscuous. After Coles was released from prison, he failed to abide by the sex-offender registration rules and consequently received a two-year prison sentence.

In 2013, when Coles was fifty-eight years old, he committed another sexual offense against a child. This time the victim was a four-year-old boy. The boy was Coles's girlfriend's great-grandson. One evening, while Coles was at his girlfriend's home, his girlfriend heard her grandson screaming "[s]top touching me." The little boy reported that Coles had inserted his finger into the boy's anus. Coles's girlfriend immediately called 911 to report the incident. Coles pled guilty to the charge of indecency with a child by contact, and the trial court sentenced Coles to eight years in prison.

Coles also denied committing this sexual offense. According to Coles, his girlfriend's relatives found out that he was a registered sex offender and "coached" the boy to accuse Coles of touching him. Coles claimed that his girlfriend's relatives wanted him thrown out of his girlfriend's house.

### 3. Psychological Tests

As a part of his evaluation, Dr. Turner administered two tests commonly used by psychologists when conducting behavioral-abnormality evaluations—the Psychopathy Checklist Revised test (PCL-R) and the Static-99R test. The PCL-R test is used to determine if a person is a psychopath. Dr. Turner explained that a PCL-R test score will range from 0 to 40 and that a score of 26 indicates a person is a psychopath. Coles scored a 22. Dr. Turner testified that a 22 is higher than most pedophiles score on the test. Moreover, Dr. Turner explained that the average man on the street would only score between a five and eight on this test. Dr. Turner attributed Coles's high score on the test to his lack of remorse, his lack of empathy, his failure to take responsibility for his actions, and his history of pathological lying. Dr. Turner characterized Coles's level of psychopathy as moderately high and stated that his high score indicated an "increased level of antisociality."

Dr. Turner also administered the Static-99R test to Coles. The Static-99R test is used to determine the likelihood that a sex offender will reoffend. After giving Coles a minus three for his age, Dr. Turner scored Coles a two on the test, which indicates that Coles has an average risk of reoffending. However, when Dr. Turner

considered all the evidence in this case, and not just the ten factors considered by the Static-99R test, he testified that he believes Coles's actual risk of reoffending is higher. According to Dr. Turner, Coles is not a "typical sex offender."

### 4. Interview

Dr. Turner met with Coles for about two hours. Dr. Turner's interview of Coles was conducted in accordance with his training as a psychologist and in accordance with the accepted standards in the field of forensic psychology. During their discussion, Coles described his childhood and his sexual and criminal history. Coles denied committing the two sexual offenses. He informed Dr. Turner that he does not need sex offender treatment but that he would participate in treatment if it would get him out of jail. As to his failure to register as a sex offender, Coles stated that his failure was just a "misunderstanding."

After reading Coles's deposition and interviews with police officers, Dr. Turner testified that Coles either lied in his former interviews or lied to him. According to Dr. Turner, Coles's story "changed depending on who he was speaking to."

### B. Coles's Testimony

After Dr. Turner testified, the State called Coles as an adverse witness. Coles denied that he had any sexual contact with either victim of his sexual offense convictions and stated that he is not a sex offender. Coles told the jury that he only pled guilty to the two sexual-offense charges because he believed that he faced life sentences if he was convicted by a jury.

8

Coles also discussed his nonsexual criminal convictions.[1] Coles was convicted of aggravated assault in 1985. Coles testified that he hit his boss with a wrench after he learned that his boss had "said some negative things about [him]." Coles was sentenced to six years' probation for that assault. In 2008, Coles was convicted of interference with an emergency phone call. At the time, Coles and his girlfriend were in the middle of an argument. Coles's girlfriend reported that after Coles punched her in her face, she picked up the phone to call 911. Coles stated that he "grabbed it and just hung it up." Coles told the jury he did it because "nobody wants to go to jail or nothing." Coles was sentenced to ten days in jail for that offense. Additionally, Coles discussed his history of using cocaine and marijuana.

## IV. SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Coles challenges the jury's SVP finding arguing that the evidence is legally and factually insufficient to support the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[2] Because we hold that the evidence is legally and factually sufficient, we overrule Coles's first and second issues.

---

[1]Dr. Turner testified that Coles's history of nonsexual criminal behavior is evidence of an antisocial personality.

[2]The trial court granted the State's motion for a partial directed verdict on whether Coles is a repeat sexually violent offender. Coles does not challenge that finding.

## A. LEGAL SUFFICIENCY

We review sexually violent predator civil commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Id.* It is the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied).

Coles's legal-sufficiency issue challenges the weight that should be given to the testimony of Dr. Turner, the State's expert witness. Specifically, Coles contends that the evidence is insufficient to prove he is a sexually violent predator because Dr. Turner's testimony was misleading, conclusory, speculative and, thus, constituted no evidence.

Opinion testimony that is wholly conclusory or speculative amounts to no evidence "because it does not tend to make the existence of a material fact 'more probable or less probable.'" *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)). Thus, "[b]are, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *Id.* "When a scientific opinion

10

is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable." *Id.* at 818. "But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Id.*

Much of Coles's argument for his legal-sufficiency issue challenges the methodology that Dr. Turner used in formulating his opinion; Coles asserts that "Dr. Turner's opinion was not based on statistical evidence scientifically supporting his recidivism prediction" and that "Dr. Turner's opinion is not based on data that supports his conclusions." Coles, however, never objected to Dr. Turner's opinions during trial on the basis that his opinions were unreliable.[3] Therefore, he must show that there is no basis to support Dr. Turner's opinions to prevail on his legal-sufficiency claim. *See id.* at 817; *In re Commitment of Barbee*, 192 S.W.3d 835, 843 (Tex. App.—Beaumont 2006, no pet.).

According to the record, Dr. Turner is licensed in his field. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *5 (Tex. App.—Beaumont

---

[3]Coles analogizes Turner's testimony to that of a forensic psychiatrist who testified in a capital-murder trial. *See Coble v. State*, 330 S.W.3d 253, 270 (Tex. Crim. App. 2010). *Coble* concerned a trial-court level challenge to the reliability of the methodology underlying the expert's opinion. *Id.* at 279–80. Coles did not raise a challenge of this type in the trial court; thus, *Coble* is inapposite. *Id.*; *see In re Commitment of Crosby*, No. 09-11-00371-CV, 2012 WL 983168, at *1–2 (Tex. App.—Beaumont Mar. 22, 2012, pet. denied) (mem. op.).

Dec. 31, 2009, no pet.) (mem. op.). He interviewed Coles, conducted risk assessments, and reviewed records regarding Coles's background, offenses, and incarceration. *See id.* Further, Dr. Turner administered actuarial tests, and he testified that these types of tests are generally accepted in his field. He explained in detail the facts and evidence he found relevant in forming his opinion and how those facts played a role in his evaluations. *See id.* And Dr. Turner relied on the types of records that are relied on by experts in his field, and he performed his evaluation in accordance with his training as a professional in his field. *See id.*

We conclude that the record provides support for Dr. Turner's opinions; consequently, his opinions cannot be characterized as wholly conclusory, speculative, or without foundation. *See Pollock*, 284 S.W.3d at 817; *Coastal Transp. Co.*, 136 S.W.3d at 233; *see also Barbee*, 192 S.W.3d at 843. Furthermore, viewing the evidence in the light most favorable to the verdict, we hold that a rational jury could have found, beyond a reasonable doubt, that Coles suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a); *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied). In other words, we conclude that the evidence is legally sufficient to support the jury's finding that Coles is a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.003(a), .062; *Mullens*, 92 S.W.3d at 885. We overrule Coles's first issue.

## B. Factual Sufficiency

The Texas Supreme Court most recently clarified the standard governing a factual sufficiency review in the rare civil cases in which the burden of proof is beyond a reasonable doubt—like cases brought under the SVP Act. *In re Commitment of Stoddard*, 619 S.W.3d 665, 668, 675–78 (Tex. 2020). When reviewing the factual-sufficiency of the evidence to support a civil commitment, we determine whether, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding, along with undisputed facts contrary to the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. *Id.* Further, when reversing for factual insufficiency, the appellate court must detail why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding. *Id.*

Coles makes several arguments to support his claim that the evidence is insufficient to prove that he suffers from a behavioral abnormality. Coles contends that the following facts render the evidence factually insufficient to show he suffers from a behavioral abnormality: (1) he does not have an antisocial personality disorder nor is he a psychopath; (2) he scored at average risk on the Static-99R actuarial test, which is designed for assessing sexual recidivism; (3) he had no sexual or violent disciplinary convictions during his most recent period of incarceration; (4) he did not assault strangers; and (5) his assaults occurred decades apart. We disagree that these facts render the evidence factually insufficient.

First, Coles presents no authority to support his position that the evidence is insufficient to support the jury's finding because he was not diagnosed with an antisocial personality disorder nor determined to be a psychopath. *See In re Commitment of Hutyra*, No. 14-17-00669-CV, 2018 WL 3911136, at *6 (Tex. App.—Houston [14th Dist.] Aug. 16, 2018, no pet.) (mem. op.); *see also In re Commitment of H.L.T.*, 549 S.W.3d 656, 660 (Tex. App.—Waco 2017, pet. denied) ("The only part of the SVP statute that calls for psychopathy testing is [S]ection 841.023(a), which applies only to the expert retained to assist TDCJ in its determination of whether to refer the person to the attorney for the State."). Although a medical diagnosis of a person's mental health may inform an assessment of whether that person has such a behavioral abnormality, determining whether a person suffers from a predisposing condition does not rest solely on such a diagnosis. *See In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012); *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 WL 2931852, at *2 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.).

Regarding Coles's score on the Static-99R test, this test considers risk factors for sexually reoffending and uses them to assess the relative risk of recidivism. *Hutyra*, 2018 WL 3911136, at *6. Dr. Turner stated that the Static-99R test does not, however, test for a behavioral abnormality and that he has considered not using the test in future evaluations. Indeed, Dr. Turner testified that the Static-99R test does not consider certain risk factors that are *relevant* to a determination of a risk to

14

reoffend. Thus, Coles's assertion that his score on this test renders the evidence insufficient fails.

Coles's other bases for challenging the sufficiency of the evidence are likewise unavailing. Coles claims he had no sexual or violent disciplinary convictions during his most recent period of incarceration, did not assault strangers,[4] and committed his assaults decades apart;[5] however, these facts do not render the evidence factually insufficient. Instead, the only question a jury must answer in a civil commitment trial is whether a person suffers from a behavioral abnormality that makes that person predisposed to committing sexually violent acts. Tex. Health & Safety Code Ann.

---

[4]Dr. Turner testified that Coles's risk level would be higher if his victims were strangers. But Dr. Turner also stated that Coles's risk level to reoffend was not lowered because he assaulted children that he knew.

[5]We reject arguments that a lack of sexually violent recidivism, even during long periods of freedom, is evidence mitigating against an SVP finding. *See In re Commitment of Mendoza*, No. 05-18-01202-CV, 2019 WL 5205710, at *7–8 (Tex. App.—Dallas Oct. 16, 2019, pet. denied) (mem. op.) (rejecting similar factual insufficiency argument that exhibitionist behavior in prison not "sexually violent"); *In re Commitment of Joiner*, No. 05-18-01001-CV, 2019 WL 4126602, at *9 (Tex. App.—Dallas Aug. 30, 2019, pet. denied) (mem. op.) (holding that evidence of ten-year gap between two sexual offenses when unconfined does not render SVP finding factually insufficient). The prevalence of ordinary conduct is of limited value in a factual sufficiency analysis because the SVP Act does not require a percentage statement of whether a person is likely to reoffend, and the question is whether there are sufficient indicia that a person has a condition causing predisposition toward violent sexual conduct. *In re Commitment of Ausbie*, No. 14-18-00167-CV, 2021 WL 1972407, at *8 (Tex. App.—Houston [14th Dist.] May 18, 2021, no pet.) (substitute mem. op.) (rejecting argument that two offenses over eight years unconfined showed defendant exercised control 99.9993% of the time). Such an argument "belies the magnitude of violent sexual offenses. By [t]his reasoning, the captain of the Titanic might as well have boasted about how many icebergs he avoided." *See id.*

15

§§ 841.003(a), .062(a); *see also Stoddard*, 619 S.W.3d at 678 (holding a factual sufficiency review based solely on these statutory requirements satisfies the constitution).

In short, the jury heard substantial evidence contradicting Coles's position. Dr. Turner opined that Coles has a behavioral abnormality and gave the jury several reasons for this determination. First, Coles has the three most significant risk factors for sexually reoffending: he is sexually deviant; he has an antisocial personality; and he persisted sexually offending after being punished for sexually offending. Second, the jury heard that (1) Coles pled guilty to sexual assault of a child and was sentenced to time in prison; (2) after his release, he was convicted of failing to abide by the sex-offender-registration rules and was returned to prison for two years; and (3) upon his second release, he reoffended by sexually offending against a four-year-old boy. Finally, the jury saw and heard Coles deny committing the offenses to which he had pled guilty.

As the factfinder, it was within the province of the jury to weigh the evidence, judge the credibility of the witnesses' testimony, and resolve any conflicts in the evidence. *See In re Commitment of Williams*, 539 S.W.3d 429, 440–41 (Tex. App.— Houston [1st Dist.] 2017, no pet.); *In re Commitment of Stuteville*, 463 S.W.3d 543, 552 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see also Stoddard*, 619 S.W.3d at 668 (stating that, in conducting factual sufficiency review in SVP case, we "may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony"). Additionally, the jury was free to believe all, part, or none of

16

a witness's testimony. *Mullens*, 92 S.W.3d at 887. We may not substitute our judgment for that of the jury. *See Stoddard*, 619 S.W.3d at 677.

We presume that the jury resolved any disputed evidence in favor of its finding that Coles is a sexually violent predator. *See id.* at 668, 674 (stating that we "must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so"). The disputed evidence that a reasonable factfinder could not have credited in favor of the jury's verdict, along with undisputed facts contrary to the verdict, is not so significant in light of the entire record such that the jury could not have found beyond a reasonable doubt that Coles suffers from a behavioral abnormality that makes him an SVP. *See id.* at 678. We therefore hold that the State presented factually sufficient evidence to support the jury's finding that Coles is a sexually violent predator. We overrule Coles's second issue.

## V. COLLATERAL ESTOPPEL

In his third issue, Coles claims that the trial court erred by restricting his cross-examination of Dr. Turner. The trial court's decision with respect to Dr. Turner was based on the State's objection that Coles could not collaterally attack his conviction for indecency with a child by contact.

### A. STANDARD OF REVIEW

We review a trial court's rulings in admitting or excluding evidence for an abuse of discretion. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). An appellate court must uphold the trial court's evidentiary ruling if there is any

legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

## B. EXCLUSION OF TESTIMONY

During his cross-examination of Dr. Turner, Coles asked the doctor whether the record reflected that the victim of Coles's conviction for indecency with a child by contact denied that Coles touched him. The State objected that the question was an improper collateral attack on the judgment, and the trial court sustained the objection. On appeal, Coles argues that the questioning was not a collateral attack on the judgment but an attempt to show that Coles did not actually victimize the four-year-old boy, and thus, Dr. Turner's opinion that Coles is sexually deviant is incorrect.

Coles, however, cannot challenge the facts of his final criminal conviction in his civil-commitment proceeding. *See In re Commitment of McCaffery*, No. 02-20-00073-CV, 2021 WL 2586807, at *10 (Tex. App.—Fort Worth June 24, 2021, no pet.) (mem. op.); *In re Commitment of Eeds*, 254 S.W.3d 555, 557–58 (Tex. App.—Beaumont 2008, no pet.) (holding that defendant in SVP proceeding could not attack accuracy of statement in criminal judgment that conviction was for indecency by contact, where that judgment had not been reversed, corrected, or set aside).

Coles testified without objection that he was convicted of sexual assault and of indecency with a child by contact. Additionally, Coles was sentenced to prison time for each conviction. And the judgments for the convictions (showing he pled guilty to the offense) were admitted at trial. The convictions are final and have not been set aside. *See Eeds*, 254 S.W.3d at 557–58. Because the objected-to testimony was properly excludable, the trial court did not err by sustaining the State's objection and limiting Coles's cross-examination of Dr. Turner. We overrule Coles's third issue.

## VI. THE DIRECTED VERDICT

Prior to the charge conference, the State moved for a partial-directed verdict on whether Coles is a repeat sexually violent offender. Coles responded, "Proving multiple convictions of offenses is part of what the State must prove in this matter. And the jury is here, ready to determine whether or not they believe that they've proven that element, and we would ask that the element go to the jury." The trial court granted the directed verdict and then asked if Coles had any objections to the charge, "other than the directed verdict that I've already addressed." Coles responded that he did not. In his fourth issue, Coles argues for the first time that including the directed verdict in the jury charge biased the jury in favor of the State.

To preserve an issue for appellate review, a timely and specific objection must be made in the trial court. Tex. R. App. P. 33.1(a)(1). And a party objecting to a jury-charge must point out distinctly the objectionable matter and the grounds for the objection. Tex. R. Civ. P. 274. Objections to a jury charge must be made "before the

19

charge is read to the jury." *See Childress Eng'g Servs. Inc. v. DeLeon*, No. 05-16-00429-CV, 2017 WL 5898520, at *2 & n.2 (Tex. App.—Dallas Nov. 29, 2017, pet. denied) (mem. op.). The primary purpose served by objections to a court's jury charge is to apprise the trial court of error, thus affording the court the opportunity to correct the error. *See Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987); *Carr v. Weiss*, 984 S.W.2d 753, 766 (Tex. App.—Amarillo 1999, pet. denied).

Coles's argument on appeal that the inclusion of the directed verdict language in the jury charge "prejudice[d] his case" does not comport with the objection he made at trial that the repeat sexually violent offender issue should be decided by the jury. Because Coles's appellate argument does not comport with the ground he asserted at trial, he has failed to preserve his complaint for appellate review.[6] *See* Tex.

---

[6]We note that although a defendant has an absolute right to a jury trial in sexually-violent-predator civil-commitment cases, *see* Tex. Health & Safety Code Ann. § 841.061(b), this court and several of our sister courts have consistently held that when there is undisputed evidence establishing that the defendant has been convicted of more than one sexually violent offense and a sentence has been imposed for one of them, a person's status as a repeat sexually violent offender is a legal determination appropriate for partial directed verdict. *See In re Commitment of Perdue*, 530 S.W.3d 750, 754 (Tex. App.—Fort Worth 2017, pet. denied) (holding trial court did not err by granting directed verdict on repeat-sexually-violent-offender element); *see also In re Commitment of Talley*, 522 S.W.3d 742, 750–51 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (same); *In re Commitment of Harris*, 541 S.W.3d 322, 330 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (same); *In re Commitment of Decker*, No. 11-17-00007-CV, 2017 WL 2869847, at *3–4 (Tex. App.—Eastland June 30, 2017, no pet.) (mem. op.) (same); *In re Commitment of Black*, 522 S.W.3d 2, 6 (Tex. App.—San Antonio 2017, pet. denied) (same); *In re Commitment of Lemmons*, No. 09-13-00346-CV, 2014 WL 1400671, at *3 (Tex. App.—Beaumont Apr. 10, 2014, pet. denied) (mem. op.) (same).

R. App. P. 33.1(a)(1); *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). We overrule Coles's fourth issue.

## VII. CONCLUSION

Having overruled Coles's four issues, we affirm the trial court's order of civil commitment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: May 12, 2022