AL SCOGGINS, Justice
The State of Texas filed a petition to civilly commit Howard Lynn Thompson as a sexually violent predator under the Sexually Violent Predator Act. See TEX. HEALTH & SAFETY CODE ANN . §§ 841.001 -.051 (West 2017) (SVP statute). A jury found beyond a reasonable doubt that Thompson is a sexually violent predator. Id. § 841.003. The trial court entered a final judgment and order of civil commitment under the SVP statute. On appeal, Thompson raises four issues. Because we overrule all of Thompson's issues on appeal, we affirm the judgment of the trial court.
I. THE TRIAL COURT'S JURISDICTION
In his first issue, he argues that the trial court lacked jurisdiction to determine sexually violent predator status without first testing for psychopathy under section 841.023 of the Health and Safety Code. See id. § 841.023.
A. Applicable Law
As noted above, section 841.023 of the Health and Safety Code is the basis for Thompson's first issue. That subsection provides as follows:
(a) Not later than the 60th day after the date of a recommendation under Section 841.022(c), the Texas Department of Criminal Justice shall assess whether the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. To aid in the assessment, the department shall use an expert to examine the person. The department may contract for the expert services required by this subsection. The expert shall make a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques to aid the department in its assessment.
(b) If as a result of the assessment the Texas Department of Criminal Justice believes that the person suffers from a behavioral abnormality, not later than *659 the 60th day after the date of a recommendation under Section 841.022(c) the department shall give notice of that assessment and provide corresponding documentation to the attorney representing the state for the county in which the person was most recently convicted of a sexually violent offense.
Id.
B. Discussion
Here, the Texas Department of Criminal Justice ("TDCJ") retained Dr. Turner, a psychologist, to evaluate Thompson to assist in the determination of whether to refer the case to the attorney representing the state, in accordance with section 841.023 of the Health and Safety Code. See id. The record evidence shows that Thompson did not fully cooperate with Dr. Turner; therefore "Dr. Turner's evaluation was not as complete as he would have liked for it to be." And as a result of Thompson's failure to fully cooperate, Dr. Turner was unable to make a determination as to whether Thompson has "full-blown psychopathy, although he did note the traits."
It is this failure to complete the psychopathy evaluation that Thompson uses to assert that the trial court lost jurisdiction over the case. Specifically, Thompson argues the following, without citation to authority:
Thompson does not allege that a failure to meet the sixty day requirement deprived the trial court of jurisdiction.... Since the psychopathy testing requirement goes to the very heart of the question of what differentiates an SVP candidate from a typical recidivist sex offender, the legislature mandated that it be performed and failure to do the testing at some point prior to trial deprives the trial court of jurisdiction to proceed further until such testing is either completed, or rejected by a defendant who is subject to penalties as a person on trial under the statute.
A review of case law shows that the Beaumont Court of Appeals has rejected Thompson's contention. See, e.g., In re Commitment of Ochoa , No. 09-15-00486-CV, 2016 WL 5417441, at *3, 2016 Tex. App. LEXIS 10652, at *7 (Tex. App.-Beaumont Sept. 29, 2016, pet. denied) (mem. op.); In re Commitment of Alvarado , No. 09-13-00217-CV, 2014 WL 1285136, at *2-3, 2014 Tex. App. LEXIS 3343, at *6 (Tex. App.-Beaumont Mar. 27, 2014, pet. denied) (mem. op.). Specifically, the Beaumont Court of Appeals stated:
Whether or not the expert who performs the "clinical assessment" finds that the inmate has a behavioral abnormality, the expert's finding from the clinical assessment is not a jurisdictional issue. The plain language of the statute states that "[t]o aid in the assessment, the department ... shall use an expert to examine the person[,]" and "[t]he expert shall make a clinical assessment ... to aid the department in its assessment. TEX. HEALTH & SAFETY CODE ANN . § 841.023(a).... The plain language of the statute does not specifically mandate that the "clinical assessment" must conclude that the person has a behavioral abnormality before the State may proceed with the civil commitment. Accordingly, the text does not indicate that the Legislature intended for the provision to be jurisdictional.
In re Commitment of Alvarado , 2014 WL 1285136, at *2-3, 2014 Tex. App. LEXIS 3343, at *6 ; see In re Commitment of Evers , 420 S.W.3d 81, 85 (Tex. App.-Beaumont 2012, pet. denied) ("Moreover, when the Legislature adopts a provision that imposes a requirement but does not specify whether the failure to satisfy that requirement defeats the court's jurisdiction, a reviewing court presumes that the *660 Legislature did not intend to make the provision jurisdictional." (citing In re United Servs. Auto Ass'n , 307 S.W.3d 299, 307 (Tex. 2010) )). We agree with the reasoning of the Beaumont Court of Appeals and, therefore, reject Thompson's contention that the trial court lacked jurisdiction to determine whether he is a sexually violent predator without first testing for psychopathy. We overrule Thompson's first issue.
II. TESTING FOR PSYCHOPATHY
In his second issue, Thompson contends that his initial, pre-petition, pre-counsel refusal to cooperate with an expert interviewer did not excuse the State's failure to have a testifying expert perform a psychopathy assessment. Specifically, he complains that the State's testifying expert, Dr. Sheri Gaines, a medical doctor that is board certified in psychiatry, was required to test for psychopathy because Dr. Turner was unable to complete the evaluation.
In this issue, Thompson relies heavily on section 841.061(f) of the SVP statute, which provides the following, in relevant part:
(c) The person and the state are each entitled to an immediate examination of the person by an expert. All components of the examination must be completed not later than the 90th day before the date the trial begins.
...
(f) A person who is on trial to determine the person's status as a sexually violent predator is required to submit to all expert examinations that are required or permitted of the state to prepare for the person's trial. A person who fails to submit to expert examination on the state's behalf as required by this subsection is subject to the following consequences:
(1) the person's failure to participate may be used as evidence against the person at trial;
(2) the person may be prohibited from offering into evidence the results of an expert examination performed on the person's behalf; and
(3) the person may be subject to contempt proceedings if the person violates a court order by failing to submit to an expert examination on the state's behalf.
See TEX. HEALTH & SAFETY CODE ANN . § 841.061(c), (f) (West 2017).
Despite the language stating that both the State and the person are entitled an immediate examination by an expert, nothing in section 841.061 calls specifically for psychopathy testing by an expert. See id. The only part of the SVP statute that calls for psychopathy testing is section 841.023(a), which applies only to the expert retained to assist TDCJ in its determination of whether to refer the person to the attorney for the State. See id. § 841.023(a) - (b). Furthermore, Thompson has not cited relevant authority that specifically supports his position. We therefore overrule Thompson's second issue.
III. SUFFICIENCY OF THE EVIDENCE
In his final two issues, Thompson complains that the evidence is legally and factually insufficient to support the finding that he is a sexually violent predator. We disagree.
A. Applicable Law
As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN . § 841.003(a).
*661 In the instant case, Thompson challenges the sufficiency of the evidence supporting the behavioral-abnormality element.
Under the SVP statute, a "[b]ehavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Id. § 841.002(2). Texas courts have stated that "[a] condition which affects either emotional capacity or volitional capacity to the extent that a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." In re Commitment of Almaguer , 117 S.W.3d 500, 506 (Tex. App.-Beaumont 2003, pet. denied) ; see, e.g., In re Commitment of Lucero , No. 09-14-00157-CV, 2015 WL 474604, at *1, 2015 Tex. App. LEXIS 1098, at *2 (Tex. App.-Beaumont Feb. 5, 2015, pet. denied) (mem. op.).
Under the SVP statute, the State bears the burden of proving beyond a reasonable doubt that the person it seeks to commit for treatment is a sexually violent predator. TEX. HEALTH & SAFETY CODE ANN . § 841.062. "[T]he burden of proof at trial necessarily affects appellate review of the evidence." In re C.H. , 89 S.W.3d 17, 25 (Tex. 2002) ; see City of Keller v. Wilson , 168 S.W.3d 802, 817 (Tex. 2005). When reviewing legal-sufficiency challenges to the evidence in SVP cases, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, each of the elements the State must prove to support a judgment that requires the defendant to be civilly committed for treatment. In re Commitment of Mullens , 92 S.W.3d 881, 885 (Tex. App.-Beaumont 2002, pet. denied). To prevail on a legal-sufficiency challenge to the evidence, Thompson must demonstrate that no evidence supports the jury's finding. See, e.g., In the Commitment of Soto , No. 09-12-00606-CV, 2014 WL 887142, at *1-2, 2014 Tex. App. LEXIS 2555, at *4 (Tex. App.-Beaumont Mar. 6, 2014, no pet.) (citing Croucher v. Croucher , 660 S.W.2d 55, 58 (Tex. 1983) ; Christus St. Mary Hosp. v. O'Banion , 227 S.W.3d 868, 873 (Tex. app.-Beaumont 2007, pet. denied) ).
In reviewing factual-sufficiency challenges to the evidence in SVP cases, we weigh the evidence to determine whether a verdict that is supported by legally-sufficient evidence nevertheless reflects a risk of injustice that compels our ordering a new trial. In re Commitment of Day , 342 S.W.3d 193, 213 (Tex. App.-Beaumont 2011, pet. denied). The risk of an injustice arising from the weight of the evidence is necessarily slight when the burden of proof is beyond a reasonable doubt and if the evidence is determined to be legally sufficient to support the jury's conclusion that the defendant is a sexually violent predator. Id. However, "if in the view of the appellate court after weighing the evidence, the risk of an injustice remains too great to allow the verdict to stand, the appellate court may grant the defendant a new trial." Id.
B. Discussion
Thompson's legal and factual sufficiency issues challenge the weight that should be given to the testimony of Dr. Gaines, the State's sole expert witness. Specifically, Thompson contends that the evidence is insufficient to prove he is a sexually violent predator because Dr. Gaines's testimony was misleading, conclusory, and speculative and, thus, constituted no evidence. Opinion testimony that is wholly conclusory or speculative amounts *662 to no evidence "because it does not tend to make the existence of a material fact 'more probable or less probable.' " City of San Antonio v. Pollock , 284 S.W.3d 809, 816 (Tex. 2009) (quoting Coastal Transp. Co. v. Crown Cent. Petroleum Corp. , 136 S.W.3d 227, 232 (Tex. 2004) ). Thus, "[b]are, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." Id. "When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable." Id. at 818. "But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." Id.
The record reflects that Thompson never objected to Dr. Gaines's opinions during trial on the basis that her opinions were unreliable. Therefore, he must show in his appeal that the evidence offers no basis to support Dr. Gaines's opinions to prevail on his legal-sufficiency claim. See id. at 817 (quoting Coastal Transp. Co. , 136 S.W.3d at 233 (internal citations omitted)); In re Commitment of Barbee , 192 S.W.3d 835, 843 (Tex. App.-Beaumont 2006, no pet.).
In determining that Thompson suffers from a behavioral abnormality, Dr. Gaines relied upon the report produced by Dr. Turner, who also concluded that Thompson suffers from a behavioral abnormality. In addition to her reliance on Dr. Turner's report, Dr. Gaines noted the following:
I use standard methodology, standard methodology in approaching forensic psychiatric cases. In a forensic case, as opposed to just a regular clinical setting, there's lots of collateral information. So in this case, there was lots of collateral information, so I had probably close to a thousand pieces of paper that I reviewed regarding Mr. Thompson. I was also able to conduct a face-to-face evaluation, conduct a psychiatric evaluation of Mr. Thompson. And I used my knowledge and expertise to come to an opinion based on the information that I gathered.
Among the information reviewed by Dr. Gaines was "police reports, victim statements, prison records from Mr. Thompson's stay in prison. I had Mr. Thompson's deposition. I had parole records.... Oh, medical records." Dr. Gaines later opined that these are the same types of records typically reviewed and relied upon by other experts performing behavioral-abnormality evaluations.
Using this information, Dr. Gaines identified Thompson's risk factors for sexually reoffending and his positive factors, which are those factors that reduce the risk of recidivism. According to Dr. Gaines, risk factors for reoffending are based on research that has been replicated and includes the following risk factors that have been identified as the most important: sexual deviance and an antisocial, unstable, or psychopathic lifestyle. Sexual deviance, in particular, "is thoughts, desires, actions that get in the way of someone's life, that get in the way of their job, that get in the way of their relationships that may rise to the level of legal problems."
In describing Thompson as being sexually deviant, Dr. Gaines recounted the details of Thompson's numerous prior convictions for sexual abuse of children, which Dr. Gaines characterized as violent offenses. As explained by Dr. Gaines, Thompson's first victim was a seven-year-old girl that he molested on more than one occasion in Georgia while babysitting, though Thompson described the encounter as him accidentally brushing against her genitals when moving the girl away from fire ants. Thompson was also investigated in Georgia for sexual allegations involving *663 two other girls he babysat-ages seven and nine. The records reflected that Thompson fondled each girl's genitals and rubbed his penis against them. And despite denying that the incidents occurred, Thompson was arrested, but never charged for these offenses.
While on probation in Georgia for child molestation, Thompson reoffended in Texas against children he babysat here. Thompson admitted that he may have accidentally touched the thigh and vaginal area of a thirteen-year-old girl. Ultimately, Thompson was convicted of three counts of aggravated sexual assault of this girl-one count pertaining to him penetrating her anus with his penis, one count pertaining to him penetrating her vagina with his penis, and the final count pertaining to him penetrating her vagina with his mouth. Thompson was also convicted of one count of indecency with a child for fondling this girl's vaginal area.
Next, Dr. Gaines noted that Texas law enforcement investigated Thompson for allegations of sexual abuse against a nine-year-old girl and an eleven-year-old boy. Though Thompson also denied these allegations, the records reflect that Thompson fondled the girl and held the boy down so Thompson's wife could sexually abuse the boy.
Dr. Gaines also indicated that Thompson is currently in a sex-offender-treatment program in prison and that he is not doing well because he "has not been very forthcoming, he's not been talking very much about his offenses." Dr. Gaines did acknowledge that some progress was made just a few weeks prior to trial, whereby Thompson admitted that he has a sexual attraction toward little girls and that he groomed his thirteen-year old victim from the time she was only six or seven years old. However, despite this progress, Dr. Gaines did not change her opinion that Thompson has a behavioral abnormality.
The testimonial evidence also showed that Drs. Gaines and Turner used the fifth edition of the Diagnostic and Statistical Manuel to diagnose Thompson with pedophilic disorder, which entails sexual thoughts, fantasies, desires, or actions toward prepubescent children that interfere with a person's life. Dr. Gaines further explained that pedophilic disorder is a congenital or acquired condition that can affect a person's emotional or volitional capacity. Specifically, it can predispose a person to commit a sexually-violent offense to the extent that the person becomes a menace to the health and safety of another person. Moreover, there is not "a cure for pedophilic disorder, but the treatment is geared at helping someone to manage their deviant thoughts and deviant behaviors helping them to deal better with that and hopefully be able to attenuate it."
Later, Dr. Gaines testified that Thompson has many of the traits of antisocial personality disorder and psychopathy, including an unstable relationship history; a history of illegal behaviors; a failure to conform to social norms; he lies frequently; he manipulates others; he does not accept responsibility for his actions; and he lives a parasitic lifestyle. This is evident in Thompson's testimony at trial, whereby he denied being a sex offender, stated that his child-molestation conviction in Georgia was "not really that severe or as severe as they made it to be," noted that he did not think that parents of children he babysits need to know about his child-molestation charges, and initially stated that he does not need to stay away from children. However, upon further questioning, Thompson agreed that he should probably stay away from children "[b]ecause of the fact that of what I've been charged for here in Texas and in Georgia." Given the above, Dr. *664 Gaines concluded that Thompson "does better in a structured environment than he does in the free world."
We conclude that the record provides support for Dr. Gaines's opinions; consequently, her opinions cannot be characterized as wholly conclusory or without any foundation. See Pollock , 284 S.W.3d at 817 ; Coastal Transp. Co. , 136 S.W.3d at 233 ; see also In re Commitment of Barbee , 192 S.W.3d at 843. Furthermore, viewing the evidence in the light most favorable to the verdict, we hold that a rational jury could have found, beyond a reasonable doubt, that Thompson is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. See TEX. HEALTH & SAFETY CODE ANN . §§ 841.002(2), 841.003(a) ; In re Commitment of Almaguer , 117 S.W.3d at 506 ; see also In re Commitment of Lucero , 2015 WL 474604, at *1, 2015 Tex. App. LEXIS 1098, at *2. In other words, we conclude that the evidence is legally sufficient to support the jury's finding that Thompson is a sexually violent predator. See TEX. HEALTH & SAFETY CODE ANN . §§ 841.003(a), 841.062 ; In re Commitment of Mullens , 92 S.W.3d at 885 ; see also In the Commitment of Soto , No. 09-12-00606-CV, 2014 WL 887142, at *1-2, 2014 Tex. App. LEXIS 2555, at *4
The evidence is also factually sufficient to support the jury's verdict because the record does not reflect a risk of injustice that compels granting a new trial. See In re Commitment of Day , 342 S.W.3d at 213. The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, some, or none of the testimony. See In re Commitment of Barbee , 192 S.W.3d at 842. The jury apparently chose to accept as credible Dr. Gaines's testimony. We therefore overrule Thompson's third and fourth issues.
IV. CONCLUSION
Having overruled all of Thompson's issues on appeal, we affirm the judgment of the trial court.