

# NUMBER 13-23-00323-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

### IN RE THE COMMITMENT OF GEORGE OLIVAREZ

---

### ON APPEAL FROM THE 148TH DISTRICT COURT
### OF NUECES COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña**
**Memorandum Opinion by Chief Justice Contreras**

A Nueces County jury found appellant George Olivarez to be a sexually violent predator (SVP), and the trial court ordered him indefinitely committed for sex-offender treatment and supervision. *See* TEX. HEALTH & SAFETY CODE ANN. ch. 841 (SVP Act). On appeal, Olivarez argues there was legally and factually insufficient evidence to support the jury's finding beyond a reasonable doubt. We affirm.

## I.    BACKGROUND

The State of Texas filed its petition to civilly commit Olivarez on June 21, 2022. The petition alleged that Olivarez was imprisoned after being convicted on April 26, 2000, for two separate offenses of indecency with a child by contact. *See id.* § 841.003(a)(1). The State further alleged that Olivarez suffers from a behavioral abnormality which makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.003(a)(2). The petition noted that Olivarez was then incarcerated but that he could be released on parole before his sentence discharge date of January 12, 2025.

Dr. Stephen Thorne, a licensed psychologist, evaluated Olivarez for a behavioral abnormality as defined by the SVP Act. Dr. Thorne testified that he has twenty years of experience practicing in the field of forensic psychology and has spent between sixteen to eighteen years of those years evaluating sex offenders for a behavioral abnormality. He testified that he has conducted hundreds of these types of evaluations and has testified at trial in a similar capacity about fifty times. While he has been retained by the Texas Department of Criminal Justice (TDCJ) and the State Counsel for Offenders to make these types of behavior abnormality evaluations, Dr. Thorne said his role is not to advocate for the State or the defendant, but to "advocat[e] for the data."

Dr. Thorne explained to the jury his process of evaluating a sex offender for a behavior abnormality. Typically, he first conducts a psychological examination of the respondent. In this case, Olivarez was first evaluated by Dr. Darryl Turner of the TDCJ's "Multi-Disciplinary Team." Dr. Thorne said that, after the preliminary psychological exam, he prepares for an interview with the sex offender by reviewing many of their various medical, prison, and legal records. For Olivarez, Dr. Thorne reviewed "the previous

2

evaluation by Dr. Turner, official criminal records outlining [Olivarez's] criminal history, the legal documents relat[ed] to [Olivarez's] various offenses, victim statements, [offense reports related to Olivarez's] different sexual offenses, . . . medical records, disciplinary records, academic records, [and] things relat[ed] to his time in prison."

Dr. Thorne then explained the various factors "that the research shows ha[ve] some relationship, either positive or negative, to sexually reoffending." He said the two main risk factors for reoffending are (1) whether the person "ha[s] a history of sexual deviancy" and (2) whether the person "ha[s] a history of nonsexual antisocial behavior," meaning "they have a pattern over time of rule violation, illegal behavior, [and] disrespecting the rights and privacy and safety of others." As to sexual deviancy, Dr. Thorne explained that research shows there is a higher risk of reoffending for sex offenders who "select boy victims, as compared to girl victims"; those who select extrafamilial victims; and those who have "some kind of drug or alcohol related link between the offenses." He also stated that the risk of reoffending decreases with age. Dr. Thorne diagnosed Olivarez with "pedophilic disorder non-exclusive attract[ion]," meaning someone who is attracted to both boys and girls, and adults; "antisocial personality traits"; and "alcohol use disorder."

Dr. Thorne compared the "sexual deviancy" risk factors to Olivarez's sexual offenses.[1] Dr. Thorne stated that, according to his review of Olivarez's legal records, Olivarez assaulted his six-year-old nephew on March 15, 1987, when he was in his late

---

[1] The defense was granted a limiting instruction "about the disclosure of hearsay facts or data underlying" Dr. Thorne's opinion. The trial court instructed the jury to consider the "hearsay evidence" from Dr. Thorne's testimony only "for the purpose of showing the basis of the expert's opinion" and not to consider the "evidence to prove the truth of the matter asserted. . . . [I]ncluding whether the facts alleged in the records are true."

twenties. At the time, Olivarez was living with his sister and "came home intoxicated, got into bed with [his nephew,]" "pulled down his [nephew's] pants," "fondled [his nephew's] penis," and "put his finger in [his nephew's] anus." Dr. Thorne found that some facts indicated an elevated risk of reoffending—including that the victim was a young boy, that the victim was asleep, and Olivarez was intoxicated—but also noted that the victim was in Olivarez's family, which indicated a lower risk of reoffending. Olivarez was sentenced to three years' imprisonment but was released early on parole after serving two or three months in jail. Dr. Thorne found it significant that, after Olivarez was released on parole, he proceeded to "violat[e] the terms and conditions of mandatory supervision" when he was arrested for driving while intoxicated.

Dr. Thorne then described Olivarez's convictions in 2000. In 1999, Olivarez, then forty-one or forty-two years old, was living with his girlfriend and her six- and eight-year-old granddaughters. Dr. Thorne testified that from June to December of that year, Olivarez touched the girls' vaginas with "both his hands and his penis" and "fondled their breast[s]." He testified that both girls were assaulted while sleeping, including once while "in bed with their grandmother," which indicated to him "a greater level of [sexual] deviancy." Dr. Thorne also found additional risk in that Olivarez was intoxicated and committed "multiple acts with both victims."

Dr. Thorne then analyzed Olivarez's history of nonsexual antisocial behavior. Olivarez was arrested for burglary when he was a juvenile and again when he was about twenty-one years old. Dr. Thorne listed Olivarez's other offenses, including "[p]ossession of marijuana," "disorderly conduct, five public intoxications, two D.W.I. arrests," and "a theft offense." Dr. Thorne stated that these arrests show "a pattern of behavior of[] non-

4

sexual rule violation, antisocial behavior, some of which occurred while he was on supervision for [another offense]." He found the nonsexual offenses significant because they showed a pattern over time, "seemingly when he was 16, some of it when he was a young adult, in 1979, and . . . 1989 and 1990." Dr. Thorne said Olivarez's rule violations in prison also indicated a pattern of antisocial behavior. He testified that, in the twenty-two years Olivarez has been in prison, he had thirty-one "disciplinary cases." He noted that most of the disciplinary cases "have been characterized as minor," none were sexual, and Olivarez has only received four violations in the past six years. However, Dr. Thorne also testified that, based on his experience evaluating other individuals for a behavior abnormality, Olivarez had "an elevated number of [disciplinary] cases."

In addition to the risk factors he analyzed, Dr. Thorne explained two tests he utilized to evaluate Olivarez's propensity to reoffend. The first was the PCL-R, which he stated is used to assess whether "somebody is a psychopath." He stated that Olivarez scored a twenty-five, which is not high enough to indicate that he is a psychopath, but "is higher than the large majority of sex offenders in these types of evaluations." He also used Static-99R, "an actuarial instrument" which creates a score of the individual's risk for sexual recidivism based on factors related to the individual's sexual deviancy and nonsexual antisocial behavior. Dr. Thorne testified that Olivarez's score on this test was "average," but clarified that the Static-99R is not the "end all, be all" of the analysis, and that the authors of the Static-99R "tell you to consider other information" that is not factored into the test's scoring. In this case, Dr. Thorne also considered Olivarez's

5

"violations of mandatory supervision," his failure to complete "a sex offender treatment program,"[2] and his use of alcohol when committing the offenses.

Dr. Thorne testified that Olivarez was "[c]alm, polite, [and] respectful" while being interviewed. Dr. Thorne said Olivarez denied ever assaulting his nephew or having a drinking problem. He also denied ever touching his girlfriend's granddaughters, though Dr. Thorne noted that according to the records, "there have been times when [Olivarez] has acknowledged committing the offenses [against the girls], but then there are definitely other times where he denie[d it]." For example, Olivarez admitted in an interview in January 2000 with law enforcement that "he would get drunk and touch the girls privately in a sexual manner." Dr. Thorne said that there are many reasons a sex offender may not want to admit their sexual offenses, and that it was "impossible for [him] to say" if Olivarez fully understands his sex offending behaviors.

Lastly, Dr. Thorne addressed factors that weighed against reoffending. These included Olivarez's current age of sixty-five, the fact that Olivarez has "some social support" after prison, the fact that "[Olivarez] has the capacity to maintain employment," and the fact that Olivarez does not have "any significant psychiatric disorder" which could "make him susceptible to impulsivity or not being connected to reality." However, Dr. Thorne testified that based on his education, training, and experience, he believed that Olivarez "meets [the] criteria as having [a] behavior abnormality that makes him likely to engage in a predatory act of sexual violence." Dr. Thorne found the following factors significant to his conclusion: Olivarez violated the terms and conditions of his community

---

[2] Dr. Thorne testified that Olivarez completed a sex offender education program in 2022, which he clarified is just "a shorter education[] oriented program" and does not provide sex offender treatment.

6

supervisions multiple times, he assaulted three prepubescent children while they were sleeping in an eleven year period, "all of his sex offense[s are] linked in some way to his alcohol use," he has "five or six arrests for alcohol-related offenses independent of his sexual offending," he could not admit to his offenses in his interview, and he has never completed sex offender rehabilitation treatment.

Olivarez testified at trial. He denied ever touching the victims or having any kind of substance abuse problem. He also testified that he only pleaded guilty to the convictions in 2000 because he said he was "threaten[ed ]with a life sentence." He said he remembered the burglary he committed when he was an adolescent, but he could not remember or testify to his other burglary conviction. Olivarez said that he was more mature now than he was before entering prison for this sentence. He testified that after he is released, he plans to work as a truck driver for a family member and get his GED.

The jury found that Olivarez is an SVP under the statutory definition, and the trial court ordered him indefinitely committed under the SVP Act. This appeal followed.

## II.      DISCUSSION

### A.      Standard of Review & Applicable Law

The SVP Act provides a procedure for the involuntary civil commitment of an SVP. TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153; *see also In re Commitment of Hull*, No. 13-17-00378-CV, 2019 WL 3241883, at *1 (Tex. App.—Corpus Christi–Edinburg July 18, 2019, pet. denied) (mem. op.) (detailing the background and purpose of SVP statutes in Texas). The statute was enacted based on legislative findings that "a small but extremely dangerous group of [SVPs] exists" and that "those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and

7

that makes the predators likely to engage in repeated predatory acts of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.001; *see Kansas v. Crane*, 534 U.S. 407, 413 (2002) (holding that a similar statute satisfies constitutional due process only when there is "proof of serious difficulty in controlling behavior").

Under the SVP Act, a person may be civilly committed if the factfinder determines, by a unanimous verdict and beyond a reasonable doubt, that the person is an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.062, .081; *see also In re Commitment of Hull*, 2019 WL 3241883, at *8. An SVP is defined as a person that (1) is a "repeat sexually violent offender," and (2) "suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one "sexually violent offense" and a sentence is imposed on at least one of those convictions. *Id.* § 841.003(b).[3] A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

In a legal sufficiency review of SVP civil commitment proceedings, we review the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a

---

[3] The statutory definition of "sexually violent offense" includes the offenses of which Olivarez was convicted. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.002(8)(A).

reasonable doubt. *Id.*; *see In re Commitment of Stoddard*, 619 S.W.3d 665, 676 (Tex. 2020). We must "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so" and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re Commitment of Stoddard*, 619 S.W.3d at 674.

"By contrast, a factual-sufficiency review is premised on consideration of the entire record." *Id.* "The assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so remains." *Id.* "However, rather than 'disregard' disputed evidence that a reasonable factfinder could not have credited in favor of the finding, the court must determine whether, in light of the entire record, that evidence 'is so significant that a factfinder could not reasonably have formed a firm belief or conviction' that the finding was true." *Id.* (citation omitted).

> By logical extension, in an SVP case where the burden of proof is beyond a reasonable doubt, the evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met.

*Id.* at 674–75 (citations omitted).

**B.      Legal Sufficiency**

Olivarez argues the evidence was legally insufficient to support the jury's finding beyond a reasonable doubt because Dr. Thorne's testimony "contained faulty suppositions [that] equated the lack of a behavioral abnormality with successful treatment, rather than focusing on current ability to control behavior[,] . . . contrary to the provisions and intention of Chapter 84 and Due Process." Olivarez argues that Dr. Thorne's

testimony was unreliable because he "presented no evidence" and did not use "a legitimate application of forensic psychology" when he opined that repeat offenders who attend sex offender rehabilitative treatment have a decreased risk of having a behavior abnormality. In other words, he claims Dr. Thorne's testimony was unreliable because he considered the fact that Olivarez had not completed sex offender rehabilitative treatment, even though "lack of treatment [is not] specified as a consideration when contemplating the existence of a behavioral abnormality." Olivarez also argues that Dr. Thorne's testimony was unreliable because there was too great an analytical gap between his opinion and the information or data on which he based that opinion. *See Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 349 (Tex. 2015) (citation omitted).

However, Olivarez did not object at trial that Dr. Thorne's opinion was unreliable; thus, to prevail on his legal sufficiency claim, he must show that the evidence offers no basis to support Dr. Thorne's opinion. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) ("When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable. But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection."); *In re Commitment of Barbee*, 192 S.W.3d 835, 843 (Tex. App.—Beaumont 2006, no pet.) ("When the basis of the complaint is about the foundational data used or relied upon by the expert, a party must present a timely

10

objection to the trial court to preserve his complaint for appeal."). We disagree that Dr. Thorne's opinion lacked a supporting basis.[4]

In any event, the SVP Act "merely establishes *what* the State must prove, not *how* the State must go about proving it." *In re Commitment of Dever*, 521 S.W.3d 84, 87 (Tex. App.—Fort Worth 2017, no pet.). Dr. Thorne's opinion—i.e., that Olivarez's failure to complete sex offender rehabilitative treatment increases the risk of him reoffending— does not, in and of itself, render the evidence legally insufficient to support the jury's finding. *See id.* As we stated in *In re Commitment of Flores*,

> [Dr.] Thorne is a licensed psychologist who has performed between 225– 250 evaluations of the type performed in this case. He testified that he used the same methodology followed by other experts in this field. He discussed in detail the risk assessment measuring tools that he implemented in his evaluation, as well as the documents he reviewed and the interview he had with [the respondent].

No. 13-19-00093-CV, 2020 WL 1613418, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 2, 2020, pet. denied) (mem. op.). Similarly, here, Dr. Thorne testified extensively about the foundations of his opinion that Olivarez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, including examining Olivarez's records, interviewing Olivarez, and performing tests. He identified and

---

[4] Olivarez relies on *Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010), for authority for his argument that Dr. Thorne's testimony was unreliable because he "cited no authority or data" for his opinions. *Coble* concerned a trial-court level challenge to the reliability of the methodology underlying the expert's opinion in a capital-murder case. *Id.* at 261, 279–80. Olivarez did not raise a challenge of this type in the trial court; thus, *Coble* is inapposite. *See id.*; *In re Commitment of King*, 657 S.W.3d 16, 26 n.7 (Tex. App.— El Paso 2022, pet. denied) (citation omitted) (finding *Coble* inapposite because the challenge to the expert's testimony "took the form of a trial-court level challenge to the reliability of the expert's opinion under the *Daubert/Kelly* standard and Tex. R. Evid. 702, not as an appellate challenge to the legal sufficiency of the evidence supporting the basis for the expert's opinion"); *see also In re Commitment of Coles*, No. 02-21- 00173-CV, 2022 WL 1496544, at *4 n.3 (Tex. App.—Fort Worth May 12, 2022, no pet.) (mem. op.) (same); *In re Commitment of Jackson*, No. 05-20-00519-CV, 2021 WL 4588514, at *4 n.4 (Tex. App.—Dallas Oct. 6, 2021, pet. denied) (mem. op.) (same).

discussed in detail the various "risk factors" that he relied upon to form and to support his opinion, including Olivarez's sexual and non-sexual criminal history, his age at onset of offending, and his unwillingness to admit to his offenses. Based on his experience, training, and the methodology used, which he explained "utilize and rely on the principles of forensic psychology," Dr. Thorne believed Olivarez suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence.

After reviewing the record, we conclude it supports Dr. Thorne's opinions and that his opinion cannot be characterized as "unreliable" or without any foundation. *See In re Commitment of H.L.T.*, 549 S.W.3d 656, 664 (Tex. App.—Waco 2017, pet denied); *In re Commitment of Dever*, 521 S.W.3d at 88; *see also In re Commitment of Flores*, 2020 WL 1613418, at *7; *In re Commitment of Hull*, 2019 WL 3241883, at *7. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Olivarez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of H.L.T.*, 549 S.W.3d at 664; *In re Commitment of Dever*, 521 S.W.3d at 88; *see also In re Commitment of Flores*, 2020 WL 1613418, at *7; *In re Commitment of Hull*, 2019 WL 3241883, at *7. The evidence is legally sufficient to support the jury's finding that Olivarez is an SVP. We overrule Olivarez's first issue.

## C.    Factual Sufficiency

By his second issue, Olivarez contends that the evidence is factually insufficient to support a finding beyond a reasonable doubt that he has a behavior abnormality as defined by the SVP Act.[5]

Olivarez points to what he claims are the "undisputed facts [which are] contrary to the verdict" that he is an SVP, including,

> that [he] is older, that he has an average risk to reoffend based on statistical data, that he would have received further treatment anyway if not civilly committed, that he had no non-sexually related violent convictions, and that, other than the offenses themselves, there is no [other] history of sexual misconduct.

He then points to "the disputed facts that [he alleges] a reasonable factfinder could not have credited in favor of the verdict." He argues that Dr. Thorne admitted on cross-examination that Olivarez's failure to confess to the sex offenses was not a risk factor, and that failure to attend sex offender treatment is a risk factor only when started but not completed. Then he argues that "[a] reasonable factfinder should have noticed" that Olivarez "could not drop out of a treatment program that the State prevented him from undertaking."

---

[5] By this issue, Olivarez contends specifically that "[t]here was little to no evidence supporting a conclusion that [he] cannot currently control a sexual impulse to commit a violent offense." However, serious difficulty controlling behavior is not something the State had to prove separately. *See In re Commitment of Dever*, 521 S.W.3d 84, 87 (Tex. App.—Fort Worth 2017, no pet.) ("The SVP Act's definition of 'behavioral abnormality' adequately subsumes the inquiry [of whether the person has serious difficulty controlling behavior]." (citations omitted)); *In re Commitment of King*, 657 S.W.3d 16, 30 (Tex. App.—El Paso 2022, pet. denied) ("[T]exas courts have specifically rejected the argument that a separate finding that an offender has serious difficulty controlling his behavior is necessary to support an SVP finding . . . ." (citations omitted)). We construe this argument as challenging the factual sufficiency of the evidence supporting the jury's determination that Olivarez has a behavioral abnormality as defined by the SVP Act.

Dr. Thorne diagnosed Olivarez with pedophilic disorder non-exclusive attraction, antisocial personality traits, and alcohol use disorder. The jury heard significant testimony regarding Olivarez's nonsexual criminal history, including his alcohol use, his convictions stemming from alcohol abuse, and multiple theft or burglary offenses throughout his life. There was testimony regarding his two convictions for sexual offenses against his six-year-old nephew and his girlfriend's six- and eight-year-old granddaughters, including two "penitentiary packets" admitted into evidence showing the convictions for these three offenses. While Olivarez denied the facts underlying his convictions, his testimony was not of such a character as to otherwise render the evidence factually insufficient. *See In re Commitment of Dever*, 521 S.W.3d at 88. The jury was entitled to draw reasonable inferences from basic facts to determine ultimate fact issues, and to resolve conflicts and contradictions in the evidence by believing all, some, or none of the testimony. *See In re Commitment of Stoddard*, 619 S.W.2d at 674; *In re Commitment of H.L.T.*, 549 S.W.3d at 664. The jury chose to accept Dr. Thorne's testimony as credible. "[A] mere disagreement with the jury as to proper evidentiary weight and credibility cannot be the basis of a reversal on factual-insufficiency grounds." *In re Commitment of Stoddard*, 619 S.W.3d at 677.

Weighing all of the evidence in a neutral light and applying the relevant factual sufficiency standard, we conclude that a rational jury could have found beyond a reasonable doubt that Olivarez was a repeat sexually violent offender who suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. *See id.* at 674; *In re Commitment of Dever*, 521 S.W.3d at 88; *In re Commitment of Williams*, 539 S.W.3d 429, 440–41 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see*

14

*also In re Commitment of Flores*, 2020 WL 1613418, at *7. Accordingly, we find that there was factually sufficient evidence to support the jury's verdict. *See In re Commitment of Williams*, 539 S.W.3d at 440–41; *see also In re Commitment of Flores*, 2020 WL 1613418, at *7. We overrule Olivarez's second issue.

### III.     CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
5th day of July, 2024.

15